```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                         FORT MYERS DIVISION
```

CHAR MOHR,

      Plaintiff,

v.                                  Case No:  2:19-cv-350-JES-NPM

JOTCAR, INC. D/B/A CARNEY
PROPERTIES,

      Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on the defendant's Motion for Summary Judgment (Doc. #29) filed on December 14, 2020. Plaintiff filed a Response in Opposition to Motion (Doc. #32) on December 28, 2020.

Plaintiff Char Mohr (plaintiff or Mohr) alleges she was the victim of sex discrimination by her former employer Jotcar, Inc., d/b/a Carney Properties (defendant or Jotcar).  Count I alleges that Mohr was subjected to a hostile work environment and a constructive discharge because of her sex, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e-(k).  Count II alleges the same claims, in violation of the Florida Civil Rights Act of 1992 (FCRA).  Plaintiff abandons her retaliation claims in Counts III and IV (Doc. #32, p. 14), and agrees that these claims should be

dismissed (Doc. #35, p. 5). Therefore Counts III and IV are dismissed with prejudice. For the reasons set forth below, defendant's summary judgment motion as to the two discrimination counts is granted.

I.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from

undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983) (finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).[1]

## II.

Jotcar is a construction and property investment company owned by John Carney (Carney). (Doc. #29, p. 1.) On or about

---

[1] Plaintiff's reliance on the Florida summary judgment standard (Doc. #32, p. 2) is misplaced in federal court, and is no longer applicable in Florida courts. The Florida Supreme Court recently amended Florida Rule of Civil Procedure 1.510(c) to provide:

"The summary judgment standard provided for in this rule shall be construed and applied in accordance with the federal summary judgment standard articulated in Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); and Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)."

In re: Amendments to Florida Rule of Civil Procedure 1.510, No. SC20-1490, ___ So.3d ___, 2020 WL 7778179 (Fla. Dec. 31, 2020).

November 18, 2013, plaintiff Mohr, a female, was hired by Carney for Jotcar as an administrative assistant. On February 28, 2016, plaintiff resigned in what she characterizes as a constructive discharge after Carney withheld her paycheck. (Doc. #29-1, 36:14-16; Doc. #35, p. 4.)  Plaintiff summarized her reasons for resigning in a Charge of Discrimination filed on or about October 20, 2016:

> I am a female. On November 18, 2013, I was hired by [Jotcar] as an Administrative Assistant. Throughout my employment, I was treated differently by Owner, John Carney (male). Mr. Carney would put me in a headlock and ask me to feel his muscles; he did not ask anyone else. On February 25, 2016, Mr. Carney asked the payroll department to withhold my check because a client did not pay the bill. On February 28, 2016, I resigned.
>
> I resigned because I could not handle the harassment anymore and Mr. Carney withheld my check.
>
> I believe that I was discriminated against because of my sex (female) and retaliated against for opposing discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended and Chapter 760, Florida Statues also known as the Florida Civil Rights Act.

(Doc. #29-2, Exh. 3.)

The sole summary judgment evidence submitted, by defendant, is the deposition of plaintiff. While Carney was deposed, neither party has submitted his deposition. During her deposition, plaintiff detailed the actions by Carney which she claims

4

establishes the basis of her hostile work environment claim and the resignation she characterizes as a constructive discharge:

   (1)  On at least four occasions Carney put plaintiff in a headlock, usually while in the office. (Id., 44:2-18; 64:17-23.) The last time such an incident occurred was in Mike Hernandez's office. Plaintiff was standing next to Carney in front of Mike Hernandez when Carney put his arm around her neck, bent plaintiff over in a headlock, and discussed building and invoices while plaintiff was in that position. After a few minutes, Carney let plaintiff out of the headlock. (Id., 39:8-22; 40:1-3.) Plaintiff testified she "ha[d] no clue" if Carney did the headlocks because of her sex or if he was attracted to her, she "wouldn't suggest sex" as the reason for the headlocks, and didn't know why he did it. Plaintiff described the headlock conduct as definitely "unprofessional" and never knew of Carney doing it to a man. (Id., 40:4-25.) When pressed, plaintiff testified that she did not know how to answer whether she was alleging Carney did the headlocks for some sexual reason, and then said she was alleging discrimination. (Id. 41:1-9.) Plaintiff testified that Carney's comment was always that he did the headlocks because he could, and "it's discrimination because of the fact, like I

said, I was female and I – it was never – I was never a witness to him do that to a male." (Id., 41:21-24.)

(2) There were several incidents (less than ten) when Carney wanted plaintiff to grab his biceps, or punch him in the biceps or to feel his muscles. (Id., 45:16-17; 49:14-17.) Plaintiff did so at first, but felt uncomfortable and thought it was inappropriate, and punched Carney less than half of the times he requested. (Id., 55:2-24; 56:17-25.)

(3) As plaintiff was driving, Carney told plaintiff to turn around and run over some buzzards because it was her job and as her boss she had to do it. (Id., 49:21-24.) Carney also told plaintiff to get rid of some owls at a job site, but she refused. (Id., 50:1-3.) Plaintiff testified that this was "just a pattern of the behavior that I endured over my time," but she did not have any evidence that this was because of her sex. (Id. 58:5-18.)

(4) Plaintiff testified that she was humiliated at a fundraiser for an employee when Carney had his arm around her neck and used his tongue to mimic licking plaintiff's cheek up and down. (Id., 50:6-9.)

(5) At another work function Carney told his wife that he wanted plaintiff to sit next to him. Plaintiff found

6

>
> this odd and uncomfortable because it was off work hours and she didn't feel the need to have to sit next to him. (Id., 57:20-25; 59:6-23; 60:14-17.)
>
> (6) Carney made comments or jokes at meetings which would make fun of or humiliate plaintiff. (Id.; 57:21-25-58:1.) Carney would say "I can say whatever I want to Char because she's got broad shoulders and can take it." (Id., 58:2-4.) No examples of such comments were given, but Carney never made any statement to plaintiff of a sexual nature. (Id. 49:1-8.)
>
> (7) Carney withheld plaintiff's last paycheck after a customer within plaintiff's purview of responsibilities, Norbies, failed to pay an outstanding balance. Plaintiff testified that Carney did so to prove he could do it, and characterized this the last straw before she resigned. (Id., 30:6-25; 31:15-20, 37:2-7.)
>
> (8) When asked if she had any evidence that any of the conduct she described was because of her sex, plaintiff responded that "[t]he only evidence I have would be because I'm female and he's male." (Id. 58:19-24.)

### III.

Both of plaintiff's remaining claims assert that she was the victim of sex discrimination in violation of Title VII and the FCRA because of the existence of a hostile work environment and a

7

constructive discharge. "Because the FCRA is patterned after Title VII, courts generally apply Title VII case law to discrimination claims brought under the FCRA." Latrece Lockett v. Choice Hotels Int'l, Inc., 315 F. App'x 862, 865 (11th Cir. 2009).

Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for an employer to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment "because of" (among other things) the individual's "sex." 42 U.S.C. § 2000e-2(a)(1). It is well established that a hostile work environment can constitute discrimination under Title VII. Meritor sav. Bank, FSB v. Vinson, 477 U.S. 57, 64-67 (1986).

> To prove a hostile work environment, the plaintiff must show
>
> (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.
>
> Workplace conduct is not measured in isolation. Rather, the evidence of harassment is considered both cumulatively and in the totality of the circumstances.

Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 808 (11th Cir. 2010)(en banc)(citations and punctuation omitted). See also Fernandez v. Trees, Inc., 961 F.3d 1148, 1153 (11th Cir. 2020).

Constructive discharge claims are appropriate when "an employer discriminates against an employee to the point such that his working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." Green v. Brennan, 578 U.S. ___, 136 S. Ct. 1769, 1776 (2016). "When the employee resigns in the face of such circumstances, Title VII treats that resignation as tantamount to an actual discharge." Id. at 1776-77. See also Hicks v. City of Tuscaloosa, Alabama, 870 F.3d 1253, 1258 (11th Cir. 2017); Fitz v. Pugmire Lincoln-Mercury, Inc., 348 F.3d 974, 977 (11th Cir. 2003); Poole v. Country Club of Columbus, Inc., 129 F.3d 551, 553 (11th Cir. 1997). "Establishing a constructive discharge claim is a more onerous task than establishing a hostile work environment claim." Bryant v. Jones, 575 F.3d 1281, 1298-99 (11th Cir. 2009)(citations omitted).

Defendant concedes for summary judgment purposes that plaintiff belongs to a protected group (female), and that a basis for employer liability exists. (Doc. #29, p. 7.) Defendant argues, however, that plaintiff cannot establish the other three elements of the hostile work environment claims or the constructive discharge claims. (Id.)

### A. Hostile Work Environment

#### (1) Unwelcomed Sexual Harassment

Plaintiff must show that she "has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; . . . ." Reeves, 594 F.3d at 808. Conduct is unwelcome "in the sense that the employee did not solicit or incite it, and in the sense that the employee regarded the conduct as undesirable or offensive." Henson v. City of Dundee, 682 F.2d 897, 903 (11th Cir. 1982).

While the Complaint alleges that plaintiff would tell Carney to stop the behavior (Doc. #1, p. 4, ¶ 24), plaintiff did not testify to such conversations in her deposition. It is reasonable to infer that some of the conduct was unwelcomed, even without explicit testimony. It is also reasonable to infer that an employee would not welcome her employer placing her in headlocks, particularly doing so in front of another employee and proceeding to discuss business matters while plaintiff is bent over in the headlock. It is similarly a reasonable inference that an employee would not welcome a simulated licking of her cheek. While there was literally no conduct of an explicit sexual nature, there is sufficient evidence that some of the alleged improper conduct was unwelcomed.

### (2) "Because of" Sex

Plaintiff must also establish that the harassment was "because of" her sex. Literally the only evidence that the conduct had anything to do with plaintiff's sex or gender is plaintiff's testimony that she never saw Carney put a male employee in a headlock or ask a male employee to touch his muscles.

"In the typical case in which a male supervisor makes sexual overtures to a female worker, it is obvious that the supervisor did not treat male employees in a similar fashion. It will therefore be a simple matter for the plaintiff to prove that but for her sex, she would not have been subjected to sexual harassment." Henson, 682 F.2d at 904. Regardless of whether the conduct may be viewed as sexual in nature, plaintiff stated that she felt it was because she is a woman and she was treated differently from men, which is sufficient for this element. Whether "conduct was based on gender animus or simply a management style some found offensive" would be an appropriate issue for the jury. Smith v. Naples Cmty. Hosp., Inc., No. 208-CV-952-FTM-29SPC, 2010 WL 2026163, at *6 (M.D. Fla. May 20, 2010), aff'd, 433 F. App'x 797 (11th Cir. 2011).

### (3) Sufficiently Severe or Pervasive

"A hostile work environment claim under Title VII requires proof that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or

11

pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Fernandez, 961 F.3d at 1152 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). This requirement contains both an objective and a subjective component. To be actionable, the behavior must result in both an environment "that a reasonable person would find hostile or abusive" and an environment that the victim "subjectively perceive[s]. . . to be abusive." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002). See also Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 583 (11th Cir. 2000); Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc).

Plaintiff has established that she subjectively perceived the environment to be abusive, even if there were no accompanying verbal statements by Carney regarding plaintiff's gender. See Reeves, 594 F.3d at 810 ("Even gender-specific terms cannot give rise to a cognizable Title VII claim if used in a context that plainly has no reference to gender."). Plaintiff did not object to the conduct after it occurred or between occurrences, and she continued with socializing with Carney and attended events in the presence of Carney outside the workplace. Nonetheless, a reasonable person would subjectively find that the "unprofessional" conduct of Carney created such a hostile or abusive environment that plaintiff subjectively perceived the conduct as abusive based on her gender. Considering the totality

of the circumstances, plaintiff has sufficiently established that the harassment was subjectively abusive.

The court considers four factors in considering whether the conduct was objectively abusive: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Mendoza, 195 F.3d at 1246. Although these factors help guide the inquiry, "the objective element is not subject to mathematical precision." Bryant, 575 F.3d at 1297. The court must view the evidence "cumulatively and in the totality of the circumstances." Reeves, 594 F.3d at 808; Fernandez, 961 F.3d at 1154.

The frequency of the headlocks was four occasions over the course of the employment, and the type of conduct did not escalate or become more severe. There were no incidents in the weeks leading up to plaintiff's resignation. While no magic number exists, Miller, 277 F.3d at 1276, the instances in this case were relatively few and less objectionable than demonstrated in other cases. Compare Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 509 (11th Cir. 2000) ("Johnson points to roughly fifteen separate instances of harassment over the course of four months") with Mendoza v. Borden, Inc., 195 F.3d 1238, 1247 (11th Cir. 1999) ("(1) one instance in which Page said to Mendoza 'I'm

13

getting fired up'; (2) one occasion in which Page rubbed his hip against Mendoza's hip while touching her shoulder and smiling; (3) two instances in which Page made a sniffing sound while looking at Mendoza's groin area and one instance of sniffing without looking at her groin; and (4) Page's 'constant' following and staring at Mendoza in a 'very obvious fashion.'").

As to the severity inquiry, the headlocks were certainly physical contact, but there was no testimony or affidavit from plaintiff indicating that plaintiff ever felt threatened by this conduct.  The conduct could certainly be perceived as humiliating because at least one incident occurred in front of a co-worker and while discussing work, and Carney stated that plaintiff had "broad shoulders" and "can take it" after another incident.  "Although gender-specific language that imposes a change in the terms or conditions of employment based on sex will violate Title VII, general vulgarity or references to sex that are indiscriminate in nature will not, standing alone, generally be actionable." Id. at 809.

In this case, none of the actions were gender specific, and were admittedly not seen as sexual in nature.  Further, the incident with the buzzards and the owl were completely gender-neutral.  Compared to other cases, the Court cannot find that the incidents in this case were sufficiently threatening nor humiliating to be severe or even sufficiently gender-related:

14

Many decisions throughout the circuits have rejected sexual-harassment claims based on conduct that is as serious or more serious than the conduct at issue in this appeal. Shepherd v. Comptroller of Public Accounts of Texas, 168 F.3d 871, 872–75 (5th Cir. 1999) (holding that several incidents over a two-year period, including comment "your elbows are the same color as your nipples," another comment that plaintiff had big thighs, touching plaintiff's arm, and attempts to look down the plaintiff's dress, were insufficient to support hostile-environment claim); Indest v. Freeman Decorating, Inc., 164 F.3d 258, 264–67 (5th Cir. 1999) (noting it was "dubious" whether several sexually oriented comments and gestures and an implied threat of retaliation for refusing a sexual advance would be sufficient to establish a hostile environment); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d Cir. 1998) (holding that statement that plaintiff had the "sleekest ass" in office plus single incident of "deliberately" touching plaintiff's "breasts with some papers that he was holding in his hand" were insufficient to alter the terms or conditions of the plaintiff's employment); Adusumilli v. City of Chicago, 164 F.3d 353, 357 (7th Cir. 1998) (holding actions insufficient to support hostile environment claim where co-employees teased plaintiff, made sexual jokes aimed at her, asked her what "putting one rubber band on top and another on the bottom means," commented about her low neck tops, repeated staring at her breasts with attempts to make eye contact, and four incidents of touching her arm, fingers or buttocks); Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1365–66 (10th Cir. 1997) (holding five "sexually-oriented, offensive" statements over sixteen months insufficient to show hostile environment, even though one of the harasser's statements occurred while he put his arm around plaintiff, looked down her dress and said, "well, you got to get it when you can"); Galloway v. General Motors Serv. Parts

15

Operations, 78 F.3d 1164, 1167-68 (7th Cir. 1996) (holding offensive comments including repeatedly calling the plaintiff a "sick bitch" insufficient under *Harris* because not necessarily gender-related); Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 753-54 (4th Cir. 1996) (holding evidence that the harasser "bumped into [the plaintiff], positioned a magnifying glass over [the plaintiff's] crotch, flipped his tie over to see its label, gave him a congratulatory kiss in the receiving line at [a] wedding, and stared at him in the bathroom" insufficient to establish violation of Title VII); Black v. Zaring Homes, Inc., 104 F.3d 822, 823-24 (6th Cir. 1997) (reversing jury verdict and finding conduct was "sex-based" but insufficiently severe or pervasive to state actionable claim, where conduct over a four-month period involved repeated sexual jokes; one occasion of looking plaintiff up and down, smiling and stating, there's "Nothing I like more in the morning than sticky buns"; suggesting land area be named as "Titsville" or "Twin Peaks"; asking plaintiff, "Say, weren't you there [at a biker bar] Saturday night dancing on the tables?"; stating, "Just get the broad to sign it"; telling plaintiff she was "paid great money for a woman"; laughing when plaintiff mentioned the name of Dr. Paul Busam, apparently pronounced as "bosom"); Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430 (7th Cir. 1995) (holding insufficiently severe or pervasive to support a hostile-environment claim nine instances of offensive behavior over seven months including repeated references to plaintiff as a "tilly" and a "pretty girl" and one instance of simulated masturbation); Kidwai v. McDonald's Corp., No. 93-1720, 1994 WL 136971 (4th Cir. 1994) (holding insufficient under *Harris* seven incidents, including one instance in which harasser asked plaintiff whether "she was in bed with someone"); Weiss v. Coca-Cola Bottling Co. of Chicago, 990 F.2d 333, 337 (7th Cir. 1993) (holding plaintiff's claims—supervisor repeatedly asked about her personal

16

> life, told her how beautiful she was, asked her on dates, called her a dumb blonde, put his hand on her shoulder at least six times, placed "I love you" signs in her work area, and tried to kiss her once at a bar and twice at work—were not sufficient for actionable sexual harassment). . . .

Mendoza, 195 F.3d at 1246-47.

As to the last factor, plaintiff need not suffer "tangible effects" to the conditions of her employment. Harris, 510 U.S. at 22. Plaintiff testified that she was depressed and emotional in the week leading up to plaintiff's termination. (Doc. #29-1, 67:7-14.) Objectively, plaintiff was subjected to behavior different than her male counterparts that was unprofessional, and therefore this factor weighs in plaintiff's favor.

"Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81-82 (1998). Given the totality of the circumstances in this case, and after considering the frequency, lack of hostility and severity, and non-gender specific nature of the conduct, Miller, 277 F.3d at 1277, the Court finds no material question of fact, and no viable Title VII or FCRA claims.

Accordingly, it is now

17

**ORDERED:**

1. Defendant's Motion for Summary Judgment (Doc. #29) is **GRANTED** on the merits as to Counts I and II.

2. Counts III and IV are **DISMISSED** with prejudice without objection from plaintiff.

3. The Clerk shall enter judgment in favor of defendant and against plaintiff as to Counts I and II, and dismissing Counts III and IV with prejudice, terminate all pending motions and deadlines, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this __10th__ day of March, 2021.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of record